Jonathan Ricasa (SBN 223550)
jricasa@ricasalaw.com
LAW OFFICE OF JONATHAN RICASA
2341 Westwood Boulevard, Suite 7
Los Angeles, California 90064
Telephone:  (424) 248-0510
Facsimile:  (424) 204-0652

Attorney for Plaintiffs
Thomas McNeal and James Martell

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Thomas McNeal, an individual; and James Martell, an individual,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>Wilmer Valderrama, an individual; The City Drive Entertainment Group Inc., a California Corporation DBA The DJ08 Films; Daniel E. Catullo, an individual; Digital Bytes, LLC, a California limited liability company; WV Productions, Inc., a California corporation; and Doe One through and including Doe One Hundred,<br><br>　　　　　　　Defendants. | Case No: CV12-8954 JGB (RZx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hon. Jesus G. Bernal<br>Courtroom 1<br><br>Date:　　October 27, 2014<br>Time:　　9:00 a.m.<br>Place:　　Courtroom 1<br>　　　　　3470 Twelfth Street<br>　　　　　Riverside, California 92501-3801<br><br>Complaint Filed: August 31, 2012<br>Removal Date: October 17, 2012<br>Pre-Trial Conf. Date: None<br>Trial Date: None |

# **TABLE OF CONTENTS**

PAGE

I.    INTRODUCTION .................................................................... 1

II.   BACKGROUND AND PROCEDURAL HISTORY ...............................................1

      A.    Factual and Legal Basis For The Claims ...................................... 1

      B.    Defendants' Production Of Evidence And Informal Discovery ................... 2

      C.    Settlement Agreement ....................................................... 3

      D.    Renegotiated Terms Of The Settlement Agreement ............................. 5

            1.    Allocation of the settlement funds ................................... 5

            2.    Undeliverable class notices ......................................... 5

            3.    Opt-out/objection period ............................................ 5

            4.    Attorneys' fees ..................................................... 6

            5.    Allocation of settlement administration costs ....................... 6

            6.    Litigation costs .................................................... 6

            7.    Notice of proposed class action settlement pursuant to 28 U.S.C.
                  § 1715 ……...……………………………………………………………………………... 6

III.  ARGUMENT ....................................................................... 7

      A.    Conditional Certification Of The Settlement Class Should Be Granted ….. 7

            1.    The proposed class representatives' claims are typical ……………... 7

            2.    Common issues of law and fact exist_…………………….………… 10

            3.    The proposed class representatives adequately represent the
                  class …………………………………………………………………... 10

      B.    The Amount Of The Settlement Is A Fair Compromise In Light Of
            The Fact That Plaintiffs' Claims Are Factually Complex, Vigorously
            Contested, And Subject To Many Legal Uncertainties .............................. 13

            1.    Potential defense about whether Defendants employed Plaintiffs
                  and class members ................................................... 14

            2.    Questions about class certification ................................. 16

3.     Potential defenses about whether Defendants are liable for

continuing wages …………………………………………….. 17

C.     The Requested Amount Of Attorneys' Fees Is Reasonable ........................ 19

D.     The Scope Of The Release And Opt-Out/Objection Period Is

Appropriate ................................................................................. 19

CONCLUSION …………………………………………………………… 20

# <u>TABLE OF AUTHORITIES</u>

Page

<u>Federal Cases</u>

<u>Alberto v. GMRI. Inc.,</u>
252 F.R.D. 652 (E.D. Cal. 2008) .................................................................. 13

<u>Alonzo v. Maximus, Inc.,</u>
832 F.Supp.2d 1122 (C.D. Cal. 2011) …………………………………………… 18

<u>Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit Services, Inc.,</u>
2009 WL 2448430 (S.D. Cal. 2009) …………………………………………… 18

<u>Balasanyan v. Nordstrom, Inc.,</u>
294 F.R.D. 550 (S.D. Cal. 2013) ............................................................. 9, 17

<u>Bao Yi Yang v. Shanghai Gourmet, LLC,</u>
2014 WL 2211617 (N.D. Cal. 2014) ........................................................ 9, 17

<u>Campbell v. PricewaterhouseCoopers, LLP,</u>
2009 602 F.Supp.2d 1163 (E.D. Cal. 2009) …………………………………… 18

<u>Cervantes v. Celestica Corp.,</u>
618 F.Supp.2d 1208 (C.D. Cal. 2009) …………………………………………… 18

<u>Drumm v. Morningstar, Inc.,</u>
695 F.Supp.2d 1014 (N.D. Cal. 2010) .................................................... 10, 17

<u>Dukes v. Wal-Mart Stores, Inc.,</u>
222 F.R.D. 137 (N.D. Cal. 2004) ............................................................... 9

<u>In re Oracle Securities Litigation,</u>
1994 WL 502054 (N.D. Cal. 1994) ........................................................... 11

<u>Jimenez v. Allstate Ins. Co.,</u>
2014 WL 4338841 (9th Cir. 2014) .......................................................... 9, 17

<u>Keck v. Bank of America,</u>
Case No. C 08–01219 CRB (N.D. Cal. July 15, 2009) ................................... 12

Lymburger v. U.S. Financial Funding, Inc.,
2012 WL 398816 (N.D. Cal. 2012) ...................................................... 11, 12, 13

Multi-Ethnic Immigrant Workers Organizing Network v. City of Los Angeles,
246 F.R.D. 621 (C.D. Cal. 2007) ........................................................... 7

Negrete v. Allianz Life Ins. Co. of North America,
287 F.R.D. 590 (C.D. Cal. 2012) ........................................................... 9

O'Connor v. Boeing North American, Inc.,
180 F.R.D. 359 (C.D. Cal. 1997) ........................................................... 8

Sandoval v. Roadlink USA Pac., Inc.,
2011 WL 5443777 (C.D. Cal. 2011) ..............................................….………… 12, 13

Schaefer v. Overland Exp. Family of Funds,
169 F.R.D. 124 (S.D. Cal. 1996) ........................................................... 8

Schlagal v. Learning Tree, Int'l,
1999 WL 672306 (C.D. Cal. 1999) ......................................................... 8

Takacs v. A.G. Edwards and Sons, Inc.,
444 F.Supp.2d 1100 (E.D. Cal. 2009) .............................................………… 17, 18

Van Vranken v. Atlantic Richfield Co.,
901 F. Supp. 294 (N.D. Cal. 1995) ......................................................... 11

Weinberger v. Jackson,
102 F.R.D. 839 (N.D. Cal. 1984) ........................................................... 8

Wingate v. The Production Farm, LLC,
Case No. CV 07-04294 DDP (C.D. Cal. Apr. 22, 2009) ................................... 12

**State Cases**

Prince v. CLS Transp., Inc.,
118 Cal. App. 4th 1320 (2004) ........................................................... 16

Rizzo v. Bd. of Trustees,
27 Cal. App. 4th 853 (1994) ........................................................... 15

S. G. Borello & Sons, Inc. v. Department of Industrial Relations,
48 Cal. 3d 341 (1989) ………………………………………………………… 14

**Federal Statutes**

29 U.S.C.
§ 206 …………………………………………………………………………… 2
§ 207 …………………………………………………………………………… 2

28 U.S.C
§ 1715(b) ……………………………………………………………………… 6

**State Statutes**

California Business & Professions Code
§ 17200 ………………………………………………………………………… 2

California Labor Code
§ 201.5 ………………………………………………………………………… 2
§ 203 ……………………………………………………………… 2, 4, 5, 8, 17, 18
§ 204 …………………………………………………………………………… 2
§ 226 …………………………………………………………………………… 2
§ 510 …………………………………………………………………………… 2
§ 1194 ………………………………………………………………………… 2
§ 2698 ………………………………………………………………………… 4

**Secondary Sources**

Alba Conte & Herbert Newberg, Newberg on Class Actions (4th ed.)
§ 3:13, at 328-29 ……………………………………………………………… 8
§ 3.13, at 333 ………………………………………………………………… 10
§ 3.135, at 359-60 …………………………………………………………… 8

California Civil Jury Instructions
§ 2704 ………………………………………………………………………… 8

## I.   <u>INTRODUCTION</u>

This matter comes before the Court by way of a motion for preliminary approval of a class action settlement.  Plaintiffs' two previous motions for preliminary approval of the class action settlement were denied without prejudice.[1]  Since then, the parties have renegotiated the settlement.  The new Settlement and this motion address the concerns and deficiencies raised in the Court's order.  Plaintiffs respectfully move this Court for: (1) preliminary certification of a settlement class as to Plaintiffs' claims; (2) appointment of the representative Plaintiffs as the class representatives for the class; (3) appointment of Jonathan Ricasa as counsel for the class; (4) preliminary approval of the Settlement Agreement; (5) approval of the parties' Class Notice; and (6) the establishment of dates for a Fairness Hearing.

## II.   <u>BACKGROUND AND PROCEDURAL HISTORY</u>

### A.   Factual and Legal Basis For The Claims

Plaintiffs allege that Defendants The City Drive Entertainment Group Inc., Digital Bytes, LLC, and WV Productions, Inc. were engaged in the two-day production of a web series entitled *King of the Floor* (hereafter "Production"), a reality web series based on a breakdancing competition in downtown Los Angeles.  Plaintiffs allege that Defendant Wilmer Valderrama, as the Executive Producer, and Defendant Daniel Catullo, as the Director/Producer, were in charge of providing direction to the members of the Settlement Class.  Plaintiffs contend that Defendants employed Plaintiffs and the class members (which includes various camera crew, production assistants, talent assistants, lighting technicians, drivers, and makeup artists) on the Production.  It is undisputed that the Production lasted two days, on June 3, 2012 and June 4, 2012.  Prior to commencement of principle photography, Defendants had engaged the services of a

---

[1] Plaintiffs initially moved for preliminary approval of a settlement on April 7, 2014 which was denied on May 6, 2014.  (Doc. No. 70.)  On June 9, 2014, Plaintiffs filed a renewed motion which was denied on August 11, 2014.  (Doc. No. 76.)

payroll company to pay Defendants' employees in accordance with all applicable labor laws.  On the set of the Production, some of the crewmembers were presented with a timecard to fill out.  Plaintiffs Thomas McNeal and James Martell, who worked as drivers on the Production, contend they were never compensated for their work.  Other crewmembers who worked on the Production had problems getting paid in a timely manner, some of whom received bounced checks.

By not paying wages by June 26, 2012, Plaintiffs contend that Defendants violated the California Labor Code regarding timing of payment upon termination of employment for employees engaged in the production of motion pictures.  Pursuant to Labor Code sections 201.5 and 204, labor performed between the 1st and 15th days of the month shall be paid by the 26th day.  California Labor Code section 203 provides, in relevant part, that: "If an employer willfully fails to pay, without abatement or reduction . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."  Cal. Lab. Code § 203.

Plaintiffs allege that by failing to pay all outstanding wages for many weeks after discharge, Defendants violated the California Labor Code and the Fair Labor Standards Act ("FLSA").  In particular, Plaintiffs allege the following five claims for relief: (1) California Labor Code sections 510 and 1194, failure to pay minimum wage or overtime compensation; (2) FLSA, 29 U.S.C. §§ 206, 207, failure to pay minimum wage or overtime compensation; (3) California Labor Code section 226, failure to provide paystubs; (4) California Labor Code section 203, failure to pay final wages; and (5) California Business & Professions Code section 17200 *et seq.*, unfair competition.

### B.    Defendants' Production Of Evidence And Informal Discovery

This Settlement is the product of extensive, arms' length, and vigorously contested settlement discussions.  Plaintiffs' counsel extensively researched factual and legal bases for claims and possible defenses, prior to the filing of the complaint, and continued the

same after the complaint was filed.  Plaintiffs' counsel reviewed data entries related to Defendants' employment of Plaintiffs and other members of the Settlement Class.  The investigation of Plaintiffs' counsel included materials independently collected by him, as well as materials voluntarily provided by Defendants which included, for example, documentation on the named Plaintiffs and data on the members of the Settlement Class. Plaintiffs' counsel had numerous discussions with Defendants' counsel, including meetings in person, concerning the facts, the applicable law, and the parties' respective claims and defenses.

The parties further engaged in multiple settlement discussions and exchanged information for settlement purposes.  Plaintiffs set forth the essential data and information which Defendants needed to produce in preparation for the settlement negotiations, and to allow Plaintiffs' attorney to conduct his due diligence and to ensure for meaningful settlement negotiations.  Defendant agreed to an informal production of various pieces of data and information.  From the information and data produced and Plaintiffs' investigation, Plaintiffs were permitted to compile the essential information and evidence to determine a settlement range that would meet the requirements that a class action settlement be fair, reasonable, and adequate.  Plaintiffs' counsel, finally, conducted a significant amount of legal research on class issues, potential defenses to class certification, and merits issues.

### C.    Settlement Agreement

A copy of the Class Action Settlement Agreement and Release of Claims (hereafter "Settlement") will be filed shortly.  The proposed settlement class definition includes the following: all crewmembers who worked in June 2012 on the production of the web series *King of the Floor* who were not paid by June 26, 2012.  (Settlement ¶ II.S.)  Pursuant to the proposed Settlement, notices will be sent out to the class members. Each class member will be informed of how their proportionate share of the settlement will be calculated.

The proposed settlement calls for a *non-reversionary* Settlement Amount of

$75,000.  (Settlement ¶ II.K.)  The Settlement Agreement provides for the payment of the proposed attorney's fees in an amount up to $18,750 (25 percent of the Settlement Amount) (Settlement ¶ VIII.A.1), incentive payments of $2,000 to each of the two Plaintiffs/Class Representatives (Settlement ¶ VIII.A.3), litigation costs estimated at $2,500 (Settlement ¶ VIII.A.1), and settlement administration costs estimated at $5,000 (Settlement ¶ VIII.A.2.)  The cash remaining after the payment of those items (estimated at $44,750) shall be distributed pro rata to Settlement Class Members on account of their claims under section 203 of the California Labor Code.  (Settlement ¶ IV.)

Under the class-notice procedure, the allocated settlement will be automatically distributed to each of the Settlement Class Members who do not opt out.  That is, upon final approval of this class action settlement, the settlement administrator will distribute the settlement funds to the Settlement Class Members who did not opt out without the need for any class member to submit a claim form.  A proof copy version of the proposed Class Notice will be filed shortly.

According to the Settlement Agreement, members of the class who do not exercise their right to opt out of the settlement will release all claims for:

> [a]ny and all claims . . . that arise from, could have been raised, touch or concern the allegations in the Action . . . including but not limited to claims for unpaid overtime, failure to pay minimum wage, failure to provide meal or rest breaks or pay one hour's wages in lieu thereof, failure to indemnify for all work related expenditures and losses, alleged violations of the Private Attorney General Act under California *Labor Code* section 2698, et seq., and all related statutory claims. . . .

(Settlement ¶ IX.A.1.)  Class members will be given an opportunity to exclude themselves from (in other words, to opt out of) the Settlement, as well as an opportunity to object to the Settlement.  The Class Notice provides instructions concerning exclusion and objections.  The timeline for submitting opt-outs shall be 60 days from the date of the mailing of the Class Notice.  (Settlement ¶ II.R.)  Upon final approval, the settlement

administrator will automatically issue a check that will remain valid for at least 120 days after the date of issuance.  (Settlement ¶ VIII.A.7.b.)  All settlement checks not cashed within 120 days of issuance shall be canceled, and the money represented by such checks shall go to a non-profit of Defendants' choosing that supports working class residents of Los Angeles, the name of which will be designated before final approval.  (Settlement ¶ VIII.A.7.b.)  The Settlement Agreement provides for a payment to the named Plaintiffs as incentive payments on account of the services that they have rendered as class representatives in the amount of $2,000 each.  (Settlement ¶ VIII.A.3.)

### D.   Renegotiated Terms Of The Settlement Agreement

The changes that the parties made to the settlement agreement include the following:

#### 1.   Allocation of the settlement funds

The Court found that under the original settlement, the allocation of the net settlement fund unfairly benefitted the named Plaintiffs, as McNeal and Martell were the only two class members who would have been eligible for the payment of unpaid wages. That provision has been removed from the Settlement Agreement.  (Settlement ¶ IV.D.) Pursuant to the renegotiated settlement, from the $75,000 settlement amount, after deductions are made for attorney's fees, incentive payments, costs, and settlement administration expenses, the remainder of approximately $44,750 will be distributed pro rata to each Settlement Class member on account of their claims under California Labor Code section 203.

#### 2.   Undeliverable class notices

The renegotiated settlement includes a provision that excludes putative class members from the Settlement Class whose class notice is returned as undeliverable by the United States Post Office.  (Settlement ¶¶ II.H, V.B.)

#### 3.   Opt-out/objection period

The renegotiated settlement increases the opt-out objection period from 30 days to

60 days.  (Settlement ¶ II.R.)[2]

        4.    <u>Attorney's fees</u>

While the original settlement agreement provided for attorney's fees of up to 40 percent of the settlement amount, the renegotiated settlement provides for up to 25 percent.  (Settlement ¶ VIII.A.1.)

        5.    <u>Allocation of settlement administration costs</u>

Under the original settlement agreement, Plaintiffs' counsel was to seek up to $10,000 for its role as settlement administrator.  The renegotiated settlement provides for a third-party settlement administrator and reduces settlement administration costs to $5,000.  (Settlement ¶ VIII.A.2.)

        6.    <u>Litigation costs</u>

While the original settlement agreement provided for litigation costs in the amount of $4,000, the renegotiated settlement provides for $2,500.  (Settlement ¶ VIII.A.1.)

        7.    <u>Notice of proposed class action settlement pursuant to 28 U.S.C. § 1715</u>

The renegotiated settlement provides that in compliance with 28 U.S.C. § 1715(b), not later than 10 days after this Settlement Agreement is filed in court, Defendants shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement.  (Settlement ¶ IV.C.)

The Class Notice has been revised accordingly and is attached as Exhibit A to the renegotiated Settlement Agreement.

---

[2] The original settlement required that objections be mailed to the Court, the settlement administrator, Plaintiffs' counsel, and Defendants' counsel.  The renegotiated settlement simplifies the objection procedure by requiring mailing of objections to the settlement administrator only.

III.   **ARGUMENT**

    A.     **Conditional Certification Of The Settlement Class Should Be Granted.**

         1.    The proposed class representatives' claims are typical.

Under the renegotiated Settlement, the named Plaintiffs are not entitled to unpaid wages, addressing the Court's prior concern that Plaintiff's claims are not typical of the Class.  Instead, Plaintiffs will be paid from the net distributable amount in the same way as the Class members, that is, they will receive their pro-rated share of continuing wages.

Plaintiffs' claims are typical as they arise from the same event or practice or course of conduct that gives rise to the claims of other class members.  Plaintiffs as class representatives have been adversely affected by the same payroll policies, practices, and procedures as the absent class members.  Plaintiffs are individuals who were employed as crewmembers on the Production and were not provided their agreed compensation within the time proscribed by the various provisions of the California Labor Code.  (McNeal Decl.¶¶ 5-6, 14; Martell Decl.¶ 2.)  Plaintiffs assert that this is the case for other crewmembers who were employed by Defendants on the Production.[3]  Plaintiffs assert injuries in the same general manner as all other class members because Defendants failed to timely pay wages upon termination of employment.

The fact that there may be varying fact situations among individual members of the class does not require denial of class action status on the ground that individual plaintiffs are not "typical" of class, so long as claims of plaintiffs and other class members are based on same legal or theory.  See Multi-Ethnic Immigrant Workers Organizing Network v. City of Los Angeles, 246 F.R.D. 621, 632 (C.D. Cal. 2007).  The typicality prerequisite may be met "even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages by the

---

[3] Plaintiffs and Defendants are presently working on a joint submission regarding evidence that demonstrates when non-named class members were paid, which will be filed before the hearing on Plaintiff's motion on October 27, 2014.

representative parties and the other members of the class." O'Connor v. Boeing North American, Inc., 180 F.R.D. 359, 372 (C.D. Cal. 1997); see also 1 Alba Conte & Herbert Newberg, Newberg on Class Actions § 3.13, at 328-29 (4th ed.). The "typicality requirement should be loosely construed." Schlagal v. Learning Tree, Int'l, 1999 WL 672306 (C.D. Cal. 1999) citing Weinberger v. Jackson, 102 F.R.D. 839, 844 (N.D. Cal. 1984).

Here, Plaintiffs are not asserting claims unique to themselves. The Plaintiffs' allegations that Defendants failed pay wages in a timely fashion are typical of the claims of members of the class. According to Newberg on Class Actions: "Most courts have looked to the elements of the cause of action that the class representative must prove in order to establish the defendant's liability. If they are substantially the same as those needed to be proved by the class members, the representative's claim is typical." 1 Conte & Newberg, supra, § 3.135, at 359-60. Here, the elements of the cause of action for section 203 continuing wages that the class representative must prove are substantially the same as those needed to be proved by the class members. These elements include: (1) the date on which class members' employment ended (June 3, 2012 or June 4, 2012); (2) that Defendants failed to pay all wages due by June 26, 2012; (3) the date on which Defendants paid class members all wages due; (4) the class member's daily wage rate at the time his/her employment with Defendants ended; and (5) that Defendants willfully failed to pay these wages. (See CACI 2704 for continuing wages for nonpayment of wages.)

Plaintiffs' claims are based on the same legal theory as those of the claims of class members. Each member of the class suffered a loss as a result of Defendants' failure to timely pay wages and each class member has the same interest in pursuing this settlement with the end result being a monetary payment. Plaintiffs' claims are sufficiently typical to render them appropriate named plaintiffs because they do not face unique defenses which would destroy class unity or shape the litigation in a way that would be detrimental to the other class members. See Schaefer v. Overland Exp. Family of Funds, 169 F.R.D.

124, 129-130 (S.D. Cal. 1996).  Accordingly, the typicality requirement has been met.

The core claim of the Plaintiffs in this class action is directed at the Defendants' practice of paying final wages late.  The named plaintiffs' claims need not be identical to the claims of the class in order to satisfy typicality requirement for class certification; rather, claims are typical if they are "reasonably co-extensive with those of absent class members."  Dukes v. Wal-Mart Stores, Inc., 222 F.R.D. 137, 166 (N.D. Cal. 2004).  The major claim of the Plaintiffs in this class action is that Defendants' practice of paying final wages late affected in the same way the individuals who came to work for the Defendants.  The practices complained of affected all 58 class members.  All members of the class were subject to the same allegedly unlawful practice.  The interests of the class members are aligned with those of the representatives.  The named plaintiffs' claims need not be substantially identical; rather, the test of typicality required for class certification is whether other members have the same or similar injury.  See Negrete v. Allianz Life Ins. Co. of North America, 287 F.R.D. 590, 603 (C.D. Cal. 2012).  Defendants failed to timely pay all class members, including the Plaintiffs.  The fact that Plaintiffs were never paid is incidental to the central legal theory advanced in this action.  Moreover, Plaintiffs are not being paid wages out of the Settlement.[4]  "[M]ost courts conclude that the

---

[4] In any event, courts have certified class actions asserting claims for both late wages and unpaid wages.  See, e.g., Jimenez v. Allstate Ins. Co., 2014 WL 4338841 *1 (9th Cir. 2014) (affirming district court's class certification of the "class with respect to the unpaid overtime, timely payment, and unfair competition claims); Balasanyan v. Nordstrom, Inc., 294 F.R.D. 550, 569 (S.D. Cal. 2013) (court certified class and rejected employer's argument that evaluating claim for continuing wages "will require assessment[s] of whether salespeople reported alleged unpaid non-sell wages and were or were not timely paid for them.")  Moreover, continuing wages are triggered by both late payment and non-payment of wages.  See, e.g., Bao Yi Yang v. Shanghai Gourmet, LLC, 2014 WL 2211617 *9 (N.D. Cal. 2014) (continuing wages triggered by failure to pay overtime);

differences upon which defendants rely to challenge typicality are differences incidental to the single legal theory and conduct upon which plaintiff's claims and the class certification motion were based."  1 Conte & Newberg, supra, § 3.13, at 333.  Indeed, in a wage and hour case such as this where Plaintiffs challenge the employer's practice of delaying payment of wage upon termination of employment, the interests, injuries, and claims are shared among class members.  Therefore, the named Plaintiffs' claims in this case are sufficiently "typical" of the claims of the class as a whole such that the class should be certified.

2.   <u>Common issues of law and fact exist.</u>

Plaintiffs and Defendants will jointly submit information regarding when non-named class members were paid, which Plaintiffs contend will demonstrate commonality among the class.  Plaintiffs contend that this information will confirm that each of the 56 non-named class members were not timely paid.  This information will be filed before the October 27th hearing on Plaintiff's motion.

3.   <u>The proposed class representatives adequately represent the class.</u>

Under the renegotiated Settlement, the named Plaintiffs are not entitled to unpaid wages, addressing the Court's prior concern that Plaintiffs would receive a disproportionate recovery creating a potential conflict of interest and rendering them inadequate class representatives.

With respect to the proposed incentive payments, as an initial matter, the Court has discretion to determine these amounts.  Plaintiffs' counsel intends to request that the Court award reasonable incentive payments not to exceed $2,000 to each of the Plaintiffs and will file a declaration in conjunction with the motion for final approval of class-action settlement, detailing Plaintiffs' efforts in advancing the litigation.  The Settlement Agreement's fairness can be determined by the Court separately from its allowance or

_____

<u>Drumm v. Morningstar, Inc.</u>, 695 F.Supp.2d 1014, 1019 (N.D. Cal. 2010) (continuing wages triggered by failure to pay unused vacation).

10

disallowance of an award of incentive payments.  In some cases, incentive awards have been evaluated as part of a Rule 54(d)(2) motion for attorney's fees.  This approach is most typically used where the settlement involves the creation of a common fund and the court exercises its equitable jurisdiction to award attorney's fees and incentive payments.  See, e.g., Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294 (N.D. Cal. 1995); In re Oracle Securities Litigation, 1994 WL 502054 (N.D. Cal. 1994).

The proposed incentive payments do not create a potential conflict of interest because the amounts are modest.  To assess whether an incentive payment is excessive, district courts balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment."  Lymburger v. U.S. Financial Funding, Inc., 2012 WL 398816 *3 (N.D. Cal. 2012) (approving $5,000 incentive payment that was 3.4 percent of the settlement amount).  Here, Plaintiffs seek $2,000 each.  The incentive payments requested by Plaintiffs amount to 2.67 percent each of the gross settlement amount.  (Calculated as follows: $2,000 ÷ $75,000 = 2.67%.)[5]  Below is a list of settlements in four class action cases where an incentive payment exceeding 2.67 percent of the gross settlement amount was awarded to a plaintiff.[6]

---

[5] With respect to incentive payments only, the Court earlier computed that Plaintiffs were seeking 7.14 percent of the settlement amount (Doc. No. 76 at 9), when Plaintiffs were actually seeking 2.67 percent each.

[6] The information about each case is known to Plaintiffs' counsel because he was personally involved in the case or he learned the terms of settlements and incentive payments awarded to plaintiffs in the class action through public records.

| Case | Settlement | Incentive payment | Percent of gross settlement amount |
|------|-----------|-------------------|-----------------------------------|
| Lymburger v. U.S. Financial Funding, Inc., 2012 WL 398816 (N.D. Cal. 2012) | $145,000 | $5,000 | 3.4 percent |
| Wingate v. The Production Farm, LLC, Case No. CV 07-04294 DDP (C.D. Cal. Apr. 22, 2009) [7] | $85,000 | $2,500 each for two class representatives | 2.9 percent |
| Keck v. Bank of America, Case No. C 08-0219 CRB (N.D. Cal. July 15, 2009) | $180,000 | $5,000 | 2.8 percent |

The proposed settlement here differs from the situation in Sandoval v. Roadlink USA Pac., Inc., 2011 WL 5443777, at *6 (C.D. Cal. Oct. 9, 2011), a case cited by the Court in its order denying approval of the earlier settlement. In Sandoval, the court rejected a settlement that provided each named plaintiff $12,500 out of the settlement fund of $325,000 for their individual claims of race discrimination, while the class claims instead related to compensation for overtime, missed meal and rest periods, and "off the clock" work. There, under the settlement, the named plaintiffs were each to receive $12,500 out of $325,000 settlement for their individual claims of race discrimination, amounting to an individual award of 3.85 percent of the total settlement amount. In contrast, McNeal and Martell's proposed incentive payments each amount to 2.67 percent

---

[7] Wingate is a comparable class action case where Plaintiffs' counsel represented motion picture employees concerning the timeliness of their pay.

MEM. OF P. & A. IN SUPP. OF MOT. FOR PRELIM. APPROVAL

of the total settlement amount.

McNeal and Martell's proposed incentive payments plus their estimated class member shares amount to approximately $2,771.55 each,[8] while class members would recover on average $771.55. (See calculation in III.B.3 below.) This is not the disparity cited in <u>Sandoval</u> or <u>Alberto v. GMRI. Inc.</u>, 252 F.R.D. 652 (E.D. Cal. 2008). In <u>Sandoval</u>, the named plaintiffs were requesting $12,500 each for their individual claims in addition to their class member shares while class members would have received $819.39. <u>Id.</u> at *12. In <u>Alberto</u>, the named plaintiffs sought a recovery of $5,000 while the remainder of the settlement class would have received an average of $24.17. <u>Id.</u> at 669. In <u>Lymburger</u>, 2012 WL 398816, for comparison, the court approved an incentive payment of $5,000 for the named class representative, where the net distribution amount was $93,750 (<u>id.</u> at *1), and where the average distribution to class members, if all 141 class members (<u>id.</u> at *2) opted into the settlement, was only $664.89.

The terms of the renegotiated settlement address the Court's prior concern that Plaintiffs would receive a disproportionate recovery.

For all of the foregoing reasons, this Court should conditionally certify the Class.

**B.     The Amount Of The Settlement Is A Fair Compromise In Light Of The Fact That Plaintiffs' Claims Are Factually Complex, Vigorously Contested, And Subject To Many Legal Uncertainties.**

For the core claim in this case which consists of exposure for continuing wages for late final payment of wages, a $75,000 settlement is an entirely reasonable amount. Defendant denies that Plaintiffs or the putative class is entitled to anything. The renegotiated Settlement has reduced attorney's fees to 25 percent of the settlement amount, reduced litigation costs to $2,500, and reduced settlement administration costs to $5,000. The cash remaining to be distributed to the class members has therefore

---

[8] The estimate here for the class member shares for McNeal and Martell are based on the average distribution to class members, assuming no opt-outs.

increased from $27,000, as originally contemplated, to $44,750.  The average distribution to class members is $771.5.  (Calculated as follows: $44,750 ÷ 58 class members = $771.55/class member.)

Plaintiffs and Defendants are presently working on a joint submission regarding evidence that demonstrates when non-named class members were paid, to provide the court sufficient information to evaluate the fairness of the Settlement.  The information will be intended to show how the Class recovery under the Settlement will adequately compensate the class members for their alleged harm, in light of the length of time between discharge and payment.  This information will be filed before the October 27th hearing on Plaintiff's motion.

Plaintiff's counsel's declaration will provide an estimate of the maximum reasonably expected liability if the Settlement Class prevailed after contested class certification proceedings and on the merits.  The theoretical maximum should be discounted because of significant merits and certification defenses.  Reasons for the settlement discount include:

     1.    <u>Potential defense about whether Defendants employed Plaintiffs and class members</u>

Plaintiffs face potential difficulty with prevailing on the merits in light of the defense raised by Defendants that they did not employ Plaintiffs and class members.  Independent contractors are not "employees" covered by the wage and hour laws.  <u>See S. G. Borello & Sons, Inc. v. Department of Industrial Relations</u>, 48 Cal. 3d 341, 351 (1989).  Plaintiffs contend that Defendants employed Plaintiffs and class members on the Production.  (First Am. Compl. ¶ 12.)  Valderrama, City Drive Entertainment Group, Catullo, Digital Bytes, and WV Productions have been and now are engaged in the business of acting as employers of crewmembers in the production of web series and films.  (First Am. Compl. ¶ 34.)  Valderrama was the creator and executive producer of the Production.  (First Am. Compl. ¶ 34.)  Catullo was an owner and/or officer of City Drive Entertainment Group.  (First Am. Compl. ¶ 34.)  Valderrama and Catullo had the

power to hire and fire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of payment to Plaintiffs and class members.  (First Am. Compl. ¶ 34.)

Plaintiffs allege that Defendants were in charge of the day-to-day work on the Production.  It is customary for the crewmembers to take orders from the department heads, who in turn, take orders from the director and producers, each of whom are agents and/or employees of the production company.  In the entertainment industry, it is the production company who is the employer of the crewmembers and who is responsible for ensuring that the crewmembers are paid their wages in a timely fashion.  Defendants were responsible for ensuring that the outstanding wages were paid to the crewmembers who worked on the Production.

Plaintiffs also contend that Catullo signed a rental agreement with Zio Rentals, Inc. ("Zio"), the company that provided production vehicles to Defendants.  The contract established that the lessee (the Defendants), and not Zio, was the employer of the drivers. As to the motion-picture industry, the Labor Commissioner has defined "employer" as "any person as defined in Section 18 of the Labor Code who directly or indirectly, or through an agent or any other person employs or exercises control over the wages, hours or working conditions of any person."  Cal. Code Regs. tit.8, § 11120.  Long-standing administrative construction of a statute by those charged with administering it is entitled to considerable deference.  See Rizzo v. Bd. of Trustees, 27 Cal. App. 4th 853 (1994). Defendants fall within the definition of "employer" set forth in the Industrial Welfare Commission regulation.  All of the Settlement Class Members worked on the same film production that took place in California (First Am. Compl. ¶ 36, 45), thus minimizing potential differences among them.

On the other hand, Defendants deny that they were Plaintiffs' employers. Defendants filed a Third Party Complaint against Zio alleging that Plaintiffs were not employed by Defendants, but instead were employed by Zio.  (See Third Party Compl., Docket No. 38.)  Defendants argue that Zio charged to Defendants on an invoice for the

1    services rendered by McNeal and Martell on the Production.  Defendants argue that this

2    invoice establishes that Zio set Plaintiffs' wage rates and asked Defendants to reimburse

3    Zio for wages earned by Plaintiffs.  Defendants argue that Zio directed Plaintiffs to work

4    as honeywagon drivers on the Production.  Defendants argue that Zio, not them, would be

5    liable for any alleged failure to pay wages to Plaintiffs.  The parties also dispute whether

6    other class members were employed by Defendants or were independent contractors who

7    operated their own businesses.  Many of the class members work on multiple productions

8    and run their own businesses, submitting invoices for their services.

9                         2.    Questions about class certification

10   Wage-and-hour cases such as the matter presently before the Court should

11   routinely proceed as class actions.  See Prince v. CLS Transp., Inc., 118 Cal. App. 4th

12   1320, 1328 (2004).  Here, the size of the class is 58 persons.  Membership in the

13   settlement class is readily ascertainable through an examination of the records that

14   Defendants kept.  The dollar amounts owed to each member of the settlement class is

15   likewise ascertainable by examining the same records.

16   However, Plaintiffs face potential difficulty in class certification proceedings.

17   First, as discussed above, Defendants assert that Plaintiffs, specifically, were not

18   employed by them.  Defendants argue that because none of the other putative class

19   members were associated with Zio, Plaintiffs' claims are not "typical" or "similar" to

20   those of other putative class members.  Defendants argue that Plaintiffs' claims are

21   unique, because Plaintiffs would have to prove they were employed by Defendants.

22   Plaintiffs filed their motion for class certification (Docket No. 40) which was set

23   for hearing for July 29, 2013.  The parties later stipulated to vacate the motion on class

24   certification to allow for Digital Bytes, LLC and WV Productions, Inc., who were added

25   as Defendants to determine and conduct discovery in preparation of oppositions to the

26   motions.  (See Docket No. 52.)

27

28

3.     Potential defenses about whether Defendants are liable for continuing wages

Defendants also presented additional defenses to the claim for continuing wages even if Plaintiffs could prove Defendants employed Plaintiffs and class members.  For example, Defendants may contend that Labor Code section 203 imposes continuing wages for failure to timely pay wages only if an employer "willfully" fails to pay the final wages of a departing employee.  An employer does not act "willfully" within the meaning of section 203 if there is a "good faith dispute" whether additional wages are owed.  See Takacs v. AG Edwards and Sons, Inc., 444 F. Supp. 2d 1100, 1126 (S.D. Cal. 2006).  "A 'good faith dispute' that any wages are due occurs when an employer presents a defense based in law or fact which, if successful, would preclude any recovery on the part of the employee.  The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist."  8 Cal. Code Regs. § 13520.  Below are examples where courts determined that continuing wages may be available:

- Bao Yi Yang, 2014 WL 2211617 at *9 (continuing wages triggered by failure to pay overtime);

- Drumm, 695 F.Supp.2d at 1019 (continuing wages triggered by failure to pay unused vacation);

- Jimenez, 2014 WL 4338841 at *1 (affirming district court's class certification of the "class with respect to the unpaid overtime, timely payment, and unfair competition claims);

- Balasanyan, 294 F.R.D. at 569 (court certified class and rejected employer's argument that evaluating claim for continuing wages "will require assessment[s] of whether salespeople reported alleged unpaid non-sell wages and were or were not timely paid for them.")

Conversely, courts have determined that continuing wages may *not* be available

1   where the employer did not act "willfully" or where the employer raised a good faith

2   dispute:

3          •      Takacs v. A.G. Edwards and Sons, Inc., 444 F.Supp.2d at 1125

4   (genuine issue of material fact, as to whether employer acted willfully when it

5   failed to pay employees the correct prevailing wage and when it failed to classify

6   employees as nonexempt from overtime pay, precluded summary judgment for

7   employer on claim for continuing wages on behalf of class of former employees).

8          •      Campbell v. PricewaterhouseCoopers, LLP, 2009 602 F.Supp.2d

9   1163, 1185 (E.D. Cal. 2009) (members of class of unlicensed associates providing

10  assistance to licensed accountants on behalf of accounting firm's clients were not

11  entitled to continuing wages as employer did not act "willfully" in classifying them

12  as exempt; accounting firm's defense demonstrated existence of good faith dispute,

13  as question involved application of several provisions of wage order that had

14  previously received only unclear interpretation, and which firm could have

15  reasonably believed exempted class members).

16         •      Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit

17  Services, Inc., 2009 WL 2448430 *7 (S.D. Cal. 2009) (granting employer's motion

18  for summary judgment on employees' continuing wage claims, finding that

19  employer raised "reasonable, non-frivolous defenses" to meal and rest period

20  claims).

21         •      Cervantes v. Celestica Corp., 618 F.Supp.2d 1208, 1221 (C.D. Cal.

22  2009) (holding that employers did not commit a willful violation to pay wages

23  under section 203 because plaintiffs had not presented evidence of a violation at

24  all).

25         •      Alonzo v. Maximus, Inc., 832 F.Supp.2d 1122, 1133-1134 (C.D. Cal.

26  2011) (employer's unsuccessful contention that it was not required pursuant to

27  discretionary exclusion to include individual bonus award payments in calculation

28  of regular rate of pay for overtime compensation was a good faith dispute, and

1    therefore, did not warrant continuing wages in case managers' class action alleging

2    failure to pay overtime.)

3         Plaintiffs maintain that they have a strong legal claim for continuing wages, but

4    acknowledge certain weaknesses that might limit or preclude recovery if the litigation

5    proceeds.  Plaintiffs concede such continuing wages can be recovered only if the

6    Defendants do not in good faith dispute the fact that wages are owed.  Here, Defendants

7    may contend, even if they were ever found to be the employers of Plaintiffs and class

8    members, there was at a minimum a good faith dispute about whether and when they

9    owed wages since many of the class members submitted invoices for their services after

10   the Production wrapped.  Plaintiffs recognize the force of this argument.  Because of the

11   risks associated with the continuing wages claim, the claim must be substantially

12   discounted for purposes of settlement.

13        **C.**    **The Requested Amount Of Attorney's Fees Is Reasonable.**

14        The renegotiated settlement has reduced attorney's fees from 40 percent to 25

15   percent of the settlement amount (Settlement ¶ VIII.A.1.), addressing the Court's concern

16   about the amount of attorney's fees.

17        **D.**    **The Scope Of The Release And Opt-Out/Objection Period Is**

18           **Appropriate.**

19        The renegotiated settlement includes a provision to exclude putative class members

20   whose notice is returned undeliverable (Settlement ¶¶ II.H, V.B.), addressing the Court's

21   concern regarding the scope of the release.  The renegotiated settlement provides for 60

22   days for objections and opt-outs to be submitted (Settlement ¶ II.R), addressing the

23   Court's concern regarding the opt-out/objection period.

24

25

26

27

28

# CONCLUSION

It is respectfully submitted that the settlement embodied in the Agreement is fair, reasonable, and adequate.  The Court should grant conditional certification of the class action, should approve the form and means of giving notice, and should set the matter for a final-approval hearing.


Dated: September 29, 2014                    Law Office of Jonathan Ricasa


                                             /s/ - Jonathan Ricasa
                                             Jonathan Ricasa
                                             Attorney for Plaintiffs
                                             Thomas McNeal and James Martell